Judy HERNDON, Executrix of the Estate of Joseph E. Herndon, Deceased, and Richlands National Bank, Richlands, Virginia, Plaintiffs,

v.

MASSACHUSETTS GENERAL LIFE INSURANCE COMPANY, Defendant.

Civil Action No. 95–0166–A.

United States District Court, W.D. Virginia, Abingdon Division.

Sept. 29, 1998.

380

Carl E. McAfee, Norton, VA, for plaintiffs.
Elsey Harris, Norton, VA, for defendant.

## MEMORANDUM OPINION

WILLIAMS, Senior District Judge.

### I. Facts and Procedural History

The deceased, Joseph Herndon, obtained a life insurance policy in the amount of $150,-000 from Massachusetts General Life Insurance Company ("MGL") on March 10, 1992. In order to secure a loan, Mr. Herndon later assigned his interest in the policy to Richlands National Bank ("Richlands"). The assignment was properly recorded by MGL.

Mr. Herndon apparently stopped paying the premiums on the life insurance policy at some time before August, 1993. On August 11, 1993, MGL sent a letter addressed to Mr. Herndon which notified him that his policy would lapse as of October 10, 1993 if he failed to pay all premiums due. The face of this letter shows that it was "carbon copied" to Richlands and to Douglas Gimbert, Mr. Herndon's insurance agent. It is undisputed that both Herndon and Gimbert received this letter,[1] however Richlands has denied receipt.

Mr. Herndon did not pay the premiums due, and MGL sent a second letter dated October 8, 1993 which was apparently designed to inform both Richlands and Mr. Herndon that the policy would lapse as of October 10, 1993. It is undisputed that Mr. Herndon received a copy of this letter,[2] and a duplicate of the letter addressed directly to Richlands has been provided to the Court. MGL's Vice President of Claims, Lucille Chatham, has testified by affidavit to the effect that this letter was mailed to Richlands. However, Richlands has denied receipt.

Mr. Herndon's policy lapsed on October 10, 1993. Rather than attempt to reinstate the lapsed policy, Mr. Herndon submitted an application for a new policy with MGL on November 3, 1993. MGL declined to issue a new policy based on the abnormal results of a blood test performed on Mr. Herndon.

In October of 1994, Richlands received word that Mr. Herndon was ill. An agent of the bank made a telephone call to MGL to make sure that the policy was still in effect. A representative of MGL informed the bank that the policy had lapsed almost a year earlier.

Mr. Herndon died on October 21, 1994, at which time Richlands made a claim for the life insurance proceeds. MGL refused to pay on the grounds that the policy had lapsed due to non-payment of premiums.

Judy Herndon, as executrix of Mr. Herndon's estate, sued for payment under the policy in the Circuit Court for Tazewell County, Virginia in September of 1995. The complaint was later amended to add Richlands as a plaintiff. In October of 1995, upon motion of MGL, the case was removed to the U.S. District Court for the Western District of Virginia, which now exercises jurisdiction on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332.

Plaintiffs and Defendant have each moved for summary judgment.

### II. Summary Judgment Standard

Summary judgment is proper when no issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–2510, 91 L.Ed.2d 202, 211 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986). In deciding a motion for summary judgment, a court must view all evidence and inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513, 91 L.Ed.2d at 216. The standard becomes somewhat convoluted in a case such as this, where cross-motions for summary judgment have been submitted on an issue for which the defendant bears the burden of proof at trial.[3] However, the same principles apply.

---

1. Plaintiffs admitted that Mr. Herndon received the August 11, 1993 letter in the response to the Defendant's Requests for Admissions. Gimbert testified by affidavit that he received a copy of the letter.

2. Plaintiffs admitted that Mr. Herndon received the October 8, 1993 letter in the response to the Defendant's Requests for Admissions.

3. Although the Virginia courts have apparently never addressed the issue, many jurisdictions

In order for a defendant to prevail on a summary judgment motion based on an affirmative defense, the defendant must shoulder the burden usually allocated to a plaintiff moving for summary judgment: the defendant must adduce evidence which supports the existence of each element of its affirmative defense, and the evidence must be "so powerful that no reasonable jury would be free to disbelieve it." 11, Coquillette, et al., Moore' Federal Practice § 56.13(1) (3rd ed.1987) (citing *Brown v. Valentine*, 240 F.Supp. 539, 539 (W.D.Va.1965)). Similarly, if a defendant seeks to use an affirmative defense as a basis to resist a plaintiff's motion for summary judgment, the defendant must create at least a triable issue of fact as to the existence of each element of the defense. *FDIC v. Giammettei*, 34 F.3d 51, 54–55 (2d Cir.1994); *Office of Thrift Supervision v. Paul*, 985 F.Supp. 1465, 1470 (S.D.Fla. 1997); *Frankel v. ICD Holdings S.A.*, 930 F.Supp. 54, 64–65 (S.D.N.Y.1996). On the other hand, a plaintiff seeking summary judgment based solely on the inability of the defendant to assert a necessary affirmative defense need only point out the non-existence of one element of that defense. The burden then shifts to the defendant to produce evidence which creates a triable issue of fact as to the availability of the defense. *Id.*

## III. Law and Discussion

Since it is undisputed that Mr. Herndon failed to pay the premiums due under the policy, the issue in this case is whether or not MGL sent notice to Richlands that the insurance policy was about to lapse.[4] The policy here provides in pertinent part that "at least 31 days before the date that the policy terminates, the Company will send notice of its intention to void the policy. Notice will be mailed to the last known addresses of the owner and to any assignee of record." [5]

As discussed in footnote 3 above, an insurer who seeks to cancel a policy because of nonpayment of premiums bears the burden of proving nonpayment. An insurer is bound to follow the cancellation procedures set out in the policy, *Wright v. Grain Dealers Nat'l. Mut. Fire Ins. Co.*, 186 F.2d 956, 958 (4th Cir.1950); *Harris v. Criterion Ins. Co.*, 222 Va. 496, 281 S.E.2d 878, 881 (Va.1981); *Early Settlers Ins. Co. v. Selected Risks Ins. Co.*, 346 F.Supp. 1272, 1276 (E.D.Va.1972), and, when notice to the owner, insured, or assignee is required, bears the burden of proving that notice was provided as mandat-

---

which have done so hold that nonpayment of premiums is an affirmative defense for which the insurer bears the burden of proof. *See, e.g., Huff v. Standard Life Ins. Co.*, 683 F.2d 1363, 1367 (11th Cir.1982); *Wiles v. Nationwide Life Ins. Co.*, 334 F.2d 296, 302 (4th Cir.1964); *Schock v. Pennsylvania Mut. Fire Ins. Co.*, 148 Pa.Super. 81, 24 A.2d 738, 740 (Pa.Super.1942); *New York Life Ins. Co. v. Holroyd*, 180 Okla. 208, 68 P.2d 529, 529–30 (Ok.1937); *Sethman Elec. and Mfg. Co. v. Mountain States Life Ins. Co.*, 93 Colo. 64, 23 P.2d 952, 953–54 (Colo.1933); *see also* 44 Am.Jur.2d *Insurance* § 1928. This Court adopts this rule as a well-reasoned statement of the law. Similarly, where the policy so dictates, an insurer bears the burden of proving that proper notice was sent to the insured before termination of coverage. *Villwock v. Ins. Co. of N. Am./CIGNA*, 22 Va.App. 127, 468 S.E.2d 130, 134 (Va.App. 1996) (stating that the insurer bears the burden of proof on the issue of notice); *Wright v. Grain Dealers Nat'l. Mut. Fire Ins. Co.*, 186 F.2d 956, 958 (4th Cir.1950) (holding that insurer must comply with the terms of the policy governing cancellation).

4. It is important to note that Richlands, the assignee, had the right under the assignment to pay premiums in the event that Mr. Herndon did not.

Richlands had an interest in knowing when the policy was about to lapse because it might have chosen to exercise its right to pay premiums in order to maintain the policy as collateral. Even though Judy Herndon is the named plaintiff on the instant Plaintiff's Motion for Summary Judgment, the relevant issue in that Motion is one of notice to Richlands.

5. Virginia law also mandates that in some situations notice must be sent to the owner of a life insurance policy before a termination of that policy will be effective. *See* Va.Code § 38.2–232. However, because there is no reason to interpret this statute in a manner inconsistent with its plain language, the statute is not applicable here. Richlands is not an "owner" of the policy within the meaning of Va.Code § 38.2–232. The Code of Virginia distinguishes between owners and assignees in several provisions related to insurance, *see, e.g.*, Va.Code §§ 38.2–3122—3125, and in some cases even requires that certain types of notice be provided to both, *see* Va.Code § 38.2–3308. There is no such requirement in Va.Code § 38.2–232. The Court does not rely on this statute in deciding these motions.

ed by policy language or statute, *Villwock v. Ins. Co. of N. Am./CIGNA,* 22 Va.App. 127, 468 S.E.2d 130, 134 (Va.App.1996).

■ In this case, the policy requires only that notice be mailed by MGL. There is no requirement that the notice actually be received to be effective. The fact that the notice need only be sent to the last known addresses of owner and assignee bears this out. Virginia courts have consistently upheld policy provisions that require only mailing of notice as opposed to receipt, holding that the insured has contracted for and assumed the risk of non-receipt. *Ampy v. Metropolitan Cas. Ins. Co.,* 200 Va. 396, 105 S.E.2d 839, 844 (Va.1958); *compare Wright,* 186 F.2d at 960 (holding that where policy required only mailing, proof of receipt was not necessary) *with Villwock,* 468 S.E.2d at 134 (holding that where statute controlled issue, and neither mailing nor receipt was specified by statute, proof of receipt was required).

In short, if MGL cannot prove that adequate notice of lapse was mailed to Richlands, then the policy was never effectively canceled. Each side contends that it should prevail as a matter of law.

**A. Defendant's Motion for Summary Judgment**

MGL's motion is based on two points. First, MGL contends that Mr. Herndon failed to pay the premiums due under the policy. Plaintiffs do not contest this fact. Secondly, MGL contends that because it provided the requisite notice of this failure, the policy lapsed as of October 10, 1993, and thus was not in effect in November of 1994 when Mr. Herndon died. MGL argues that it provided the requisite notice via the letters of August 11, 1993 and/or October 8, 1993.

**i. The Letter of August 11, 1993.**

■ MGL has submitted the affidavit of Vice President of Claims Lucille Chatham, wherein she testifies that "[b]y letter dated August 11, 1993, MGL notified Joseph E. Herndon that premiums had not been paid

on [the policy], and that for the policy to remain in effect, premiums were to be received by MGL by October 10, 1993." Chatham does not testify, however, that the letter was mailed to Richlands. The letter shows by the "cc" notation that the writer intended for a copy to go to Richlands and to Agent Gimbert. Plaintiffs admitted that Mr. Herndon received the letter, and Gimbert has testified that he received a copy as well.[6] Richlands does not dispute this testimony, but does allege that it never received the letter.

As discussed above, the issue here is of mailing, not of receipt. Richlands has not produced more than a scintilla of evidence that the August 11, 1993 letter was not mailed, but, fortunately for Richlands, the Court "must evaluate the evidence presented through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). At trial, MGL will bear the burden of proving that the notice was mailed. As yet, there is insufficient evidence in the record to meet this burden.

MGL has certainly produced evidence by which a jury could infer that the letter was mailed to Richlands. However, this Court is unwilling to rule that a notation of "cc" on a letter is equivalent to positive testimony that a letter was properly addressed and mailed.

For purposes of its motion for summary judgment, MGL has failed to establish the affirmative defense of nonpayment and notice thereof through the mechanism of the August 11, 1993 letter. This is true even though some circumstantial evidence has been provided to support each element of the defense. When the Court examines the record in the light most favorable to the nonmoving party, Richlands, it appears that MGL has done no more than produce evidence from which a jury could find that the August 11, 1993 letter was sent to Richlands.

**ii. The Letter of October 8, 1993.**

Before reaching the issue of whether the October 8, 1993 letter was mailed to Rich-

---

6. Judy Herndon has testified by affidavit that she never received notice of the lapse or pending lapse of the policy. This testimony is irrelevant, since Judy Herndon is not the owner of the policy or the assignee, and thus is not an individual to whom notice would normally be sent.

384

lands, the Court must first address the legal significance of that letter. The policy here called for notice to be mailed to the owner and any assignee of record at least 31 days before the policy lapsed. The October 8, 1993 letter is dated only two days before the October 10, 1993 date of lapse, and was apparently calculated to actually arrive after the policy had lapsed.[7] Clearly, this letter by itself was ineffective to cancel the policy as of October 10, 1993 as it purports to do. However, the fact that this notice was late does not necessarily mean that it is wholly inoperative.

In Virginia, "under the rule generally applicable to cancellation of insurance, failure to give notice of the requisite length does not void the notice; instead, cancellation becomes effective after the required period has lapsed." *Villwock v. Ins. Co. of North America/CIGNA*, 22 Va.App. 127, 468 S.E.2d 130, 134–35 (Va.App.1996) (citing *Wright v. Grain Dealers Nat'l. Mutual Fire Ins. Co.*, 186 F.2d 956, 960–61 (4th Cir.1950)); 43 Am. Jur.2d *Insurance* § 389. Thus, the letter of October 8, 1993, if sent to Richlands as MGL contends, would have provided notice that the policy would lapse 31 days after mailing, or, in other words, on or about November 10, 1993.[8]

The evidence pertaining to the October 8, 1993 letter is of a substantially different character from that pertaining to the August 11, 1993 letter. While the letter of August 11, 1993 was directed to Mr. Herndon and "cc'd" to Richlands and Agent Gimbert, the letter of October 8, 1993 was apparently addressed directly to Richlands. Moreover, MGL's vice president of claims testified by affidavit that "[b]y letter dated October 8, 1993, MGL advised The Richlands National Bank that the premium necessary to keep [the policy] in force had not been received, and, consequently, coverage terminated as of October 10, 1993."

Plaintiffs have submitted little if any evidence that the October 8, 1993 letter was not mailed. It is true that Richlands has denied receipt. Further, the fact that Richlands called MGL in late 1994 to check the status of the policy could create the inference that there was, at the time of the call, no notice on file with Richlands. However, this evidence is more probative on the issue of whether Richlands received the letter than whether MGL mailed it. The presumption that a properly mailed letter will reach the addressee, well-settled in Virginia law,[9] does not work in reverse. Failure to receive a letter does not create a presumption that it was never mailed. *Wright*, 186 F.2d at 958 (holding that failure to receive letter does not raise presumption that letter was not mailed, and in any event such evidence is irrelevant when policy calls only for mailing).

Despite the fact that Plaintiffs have produced virtually no evidence to suggest that the October 8, 1993 letter was never mailed, it still cannot be said that MGL has offered evidence of mailing with which no reasonable jury could disagree. Inasmuch as it will be MGL's burden to do so at trial, MGL's motion must fail. The testimony by the vice president of claims is conclusory at best, and, although the vice president certifies that she is testifying from personal knowledge that "by letter dated October 8, 1993, MGL advised The Richlands National Bank" that the policy had lapsed, this is a far cry from positive testimony to the effect that the affiant created, stamped and deposited the letter in the mail or witnessed these acts, or even ordered them performed. When all the evidence is viewed in the light most favorable to the non-moving party, it appears that MGL has failed to prove that the October 8, 1993 letter was mailed.

### iii. Other Mailings That Could Have Provided Notice

---

7. The letter of October 8, 1993 states in pertinent part (and in past tense) that Mr. Herndon's policy "lapsed as of October 10, 1993." This letter is not a notice of a pending lapse, but rather a statement that the policy is no longer in effect.

8. It is unnecessary for the Court to decide exactly which day the cancellation would have become effective, since Mr. Herndon did not die, and thus no claim was made, until October of 1994.

9. *See Davis v. Am. Interinsurance Exch.*, 228 Va. 1, 319 S.E.2d 723, 724 (Va.1984).

Because even late notice can be effective as discussed above, any letter mailed by MGL to Richlands at least 31 days before an event occurred which rendered the policy proceeds payable could be construed as adequate notice of lapse, provided that it would have informed Richlands that the premiums had not been paid. However, neither party has brought any such mailing to the Court's attention. None of the correspondence between Mr. Herndon and MGL concerning Mr. Herndon's attempt to obtain a new policy in November of 1993 is addressed or "cc'd" to Richlands. Finally, the phone conversation that the Richlands employee had with MGL in October of 1994 cannot serve as adequate notice. The response by MGL that the policy had lapsed was neither timely (Mr. Herndon died on October 21, 1994) nor sent by mail, as the policy requires.

## B. Plaintiffs' Motion for Summary Judgment

Plaintiffs argue that even though Mr. Herndon failed to pay the premiums due under the policy, the policy never lapsed because MGL failed to provide notice of the impending lapse as required. At the heart of this argument is Richlands' allegation that it never received the letters of August 11, 1993 and October 8, 1993. As discussed above, Plaintiffs have also provided the deposition testimony of a bank employee, wherein she testifies that the bank, upon learning of Mr. Herndon's illness around October of 1994, called MGL to make sure the policy was in effect. This could support the inference that, at the time of that call, there was no letter in the Herndon file showing a lapse of coverage. Once again, however, the Court must point out that the issue here is of mailing, not of receipt. The Plaintiff's evidence thus far is tenuous indeed on that issue.

However, Plaintiffs bear a significantly lighter burden on their motion than does Defendant, since Defendant's sole defense is affirmative in nature. Because Plaintiffs have at least pointed out evidence that inferentially supports a failure of that defense, namely, failure to mail notice, Plaintiffs have made a properly supported motion for summary judgment. Nevertheless, MGL has ad-

equately met and defeated the motion. As discussed above, some evidence has been offered to support each element of MGL's affirmative defense. Through the testimony of Vice President of Claims Lucille Chatham and Agent Gimbert and the admissions of the Plaintiffs, MGL has provided evidence by which a reasonable jury could find that either or both letters were in fact mailed to Richlands.

## IV. Conclusion

Neither Plaintiffs nor Defendant is entitled to judgment as a matter of law. Both have submitted evidence sufficient to defeat the opposing party's motion, but neither has submitted evidence sufficient to succeed on their own motions. It remains for the factfinder to determine whether MGL sent adequate notice of the cancellation of Mr. Herndon's policy to Richlands. Both Motions for Summary Judgment are DENIED.