COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Moon, Judges Coleman and Fitzpatrick
Argued at Salem, Virginia


ROBERT A. VILLWOCK, T/A
 PIONEER CONSTRUCTION CO., INC.
                                        OPINION BY
v.    Record No. 0434-95-3    CHIEF JUDGE NORMAN K. MOON
                                        MARCH 19, 1996
INSURANCE COMPANY OF NORTH AMERICA/CIGNA,
 CHRISTOPHER R. ROUTH, ROBERT C.
 HUFFMAN AND UNINSURED EMPLOYERS' FUND


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          R. Louis Harrison, Jr. (R. Louis Harrison,
          Jr., P.C., on briefs), for appellant.

          John M. Poma (Midkiff & Hiner, P.C., on
          brief), for appellee Insurance Company of
          North America/CIGNA.

          No brief or argument for appellees
          Christopher R. Routh, Robert C. Huffman and
          Uninsured Employers' Fund.


     Robert A. Villwock appeals the ruling of the Workers'

Compensation Commission that CIGNA, the putative insurer,

complied with Code § 65.2-804(B) in cancelling his workers'

compensation insurance policy.  We affirm because credible

evidence supported the commission's finding that the employer

received notice of cancellation.

     Robert A. Villwock owns and operates the Pioneer

Construction Company.  He had workers' compensation insurance

through CIGNA.  The most recent policy was to be effective from

April 7, 1993 through April 7, 1994.  As a condition of that

policy, Villwock was required to comply with certain audit

requirements, including provision of payroll records.

On March 30, 1993, CIGNA requested payroll information for an audit. The request was accompanied by a notice that the information had to be provided within fifteen days in order to avoid an interruption in coverage. CIGNA received no response from Mr. Villwock, and sent a second request for information on May 8th. Villwock's insurance agent, Virginia Fowler, received a copy of this notice, and contacted Villwock by telephone. Villwock assured Fowler on two occasions that he would provide the requested information immediately, but did not do so.

CIGNA then requested permission from NCCI, which administers workers' compensation insurance for the Commonwealth of Virginia, to cancel Villwock's policy. A copy of this request was sent to Villwock and his agent. On August 13, 1993, NCCI responded directly to Villwock, with a copy to CIGNA, informing Villwock that if he did not provide the requested information within fifteen days his policy would be cancelled. While both Fowler and CIGNA received their copies of the aforementioned notices, Villwock denied receiving any of them.

CIGNA then proceeded with cancellation of the policy pursuant to Code § 65.2-804(B). On August 27, 1993, it sent a notice to Villwock, with a copy to the agent, informing him that his insurance would be cancelled effective September 30, 1993. The statute requires a thirty-day notice to the employer and the commission, and CIGNA routinely adds five to seven days to account for mailing. Under standard office practice, the notices to Villwock and the agent would be mailed the day the notice was

typed, and the commission's would be mailed two to five days later in a bulk mailing.

The commission did not receive its notice until September 22, 1993. NCCI, to which CIGNA also sent a copy of the notice, received its notice on September 16. Because it received its notice less than thirty days from the cancellation date, the commission changed the effective date of the cancellation to October 21, 1993, thirty days from its receipt of the notice from CIGNA. The commission's standard practice was to send a notice to the employer notifying it of the cancellation and the effective date. A commission witness testified that this form was sent, although he was unable to produce a copy of it because the hard copies of the record had been destroyed. Villwock denied receiving notice from either CIGNA or the commission. His agent received her copy of the notice from CIGNA.

On November 15, 1993, two employees of Pioneer Construction fell from a scaffold and were injured, one severely. On the day of the accident, Villwock contacted his insurance agent, who informed him that his policy had been cancelled. Villwock testified that CIGNA did not inform him that the policy was cancelled until he contacted the company himself in February 1994.

At his deposition, Villwock testified that in June 1993 he moved from Route 1, Box 148B in Huddleston, Virginia to 112 Autumn Avenue in Huddleston. Villwock did not inform either CIGNA or his insurance agent of his change of address. He did,

however, provide a forwarding order to the post office, and he received forwarded mail. He was still receiving forwarded mail as of the deposition date of August 24, 1994. Yet, he testified that he never received a single item of correspondence from CIGNA, NCCI, or the commission concerning either the audit or the cancellation of his insurance. He testified that he was unaware of any other mail he failed to receive after changing his address.[1] He acknowledged receiving and cashing a refund check from CIGNA that was mailed to his former address in March 1994.

Villwock's method of dealing with his business mail was haphazard. Both he and his wife, who helped with the business, collected the mail. Mail was opened each day "at random" by either Villwock or his wife. The business and personal mail were both delivered to the same mailbox. The Villwocks did not open all of the business mail at once, but instead "at various times." They did not datestamp the mail.

We construe the evidence in the light most favorable to the party prevailing below. States Roofing Corp. v. Bush Construction Corp., 15 Va. App. 613, 616, 426 S.E.2d 124, 126 (1993). The commission's factual findings will not be disturbed on appeal if supported by credible evidence. Id. This Court is not bound by the commission's determination of legal questions.

---

[1] At the hearing, Villwock testified that he had changed his address in 1987. The commission cited this date in its decision. The testimony at the deposition concerning the change of address was more clear and detailed, and is also more consistent with other facts in the record. We therefore accept the deposition testimony for purposes of this appeal.

<u>Cibula v. Allied Fibers & Plastics</u>, 14 Va. App. 319, 324, 416

S.E.2d 708, 711 (1992), <u>aff'd</u>, 245 Va. 337, 428 S.E.2d 905

(1993).

Resolution of this case requires interpretation of Code

§ 65.2-804(B).  The statute provides, in pertinent part:

> No policy of insurance hereafter issued under the provisions of this title . . . shall be cancelled or nonrenewed by the insurer issuing such policy . . . except on thirty days' notice to the employer and the Workers' Compensation Commission . . .

The threshold question is whether the insurance company must

show that the notice was received, or merely that it was mailed.

The commission's opinion is ambiguous on this issue.  For the

reasons set forth below, we hold that CIGNA must show that the

employer received the notice.[2]

In <u>American Mutual Fire Insurance Co. v. Barlow</u>, 4 Va. App.

352, 355-56, 358 S.E.2d 184, 186-87 (1987), we held that the

notice must actually be received by the commission in order for

cancellation to be effective.  In <u>Barlow</u>, the employer received

the notice but the commission did not.  We thus had no need to

decide whether the employer must actually receive the notice.

In deciding whether actual receipt is necessary to effect

cancellation, the language of the statute controls.  Where the

---

[2] The commission did not rule explicitly on whether Villwock had received the notice.  However, it noted that Villwock had received and cashed the policy refund check--in effect finding that Villwock had received the notice as well.  As discussed further below, this finding is amply supported by credible evidence.

statute provides that the policy may be cancelled by giving a certain number of days' notice to the insured, and does not specify mailing as the method of providing notice, actual receipt is required for the notice to be effective.[3]   This rule is well established in both cases and commentary.  See Scanlon v. Empire Fire and Marine Insurance Co., 117 Idaho 691, 693-94, 791 P.2d 737, 739 (1990); Larocque v. Rhode Island Joint Reinsurance Assoc., 536 A.2d 529, 530-31 (R.I. 1988); Nunley v. Florida Farm Bureau Mutual Insurance Co., 494 So.2d 306, 307 (Fla. Dist. Ct. App. 1986); Osborne v. Unigard Indemnity Co., 719 S.W.2d 737, 740-41 (Ky. Ct. App. 1986); Smith v. Municipal Mutual Insurance Co., 169 W.Va. 296, 298-99, 289 S.E.2d 669, 670-71 (1982); Rocque v. Co-operative Fire Insurance Association of Vermont, 140 Vt. 321, 325, 438 A.2d 383, 385-86 (1981); Martin J. McMahon, Annotation, Actual Receipt of Cancellation Notice Mailed By Insurer as Prerequisite to Cancellation of Insurance, 40 A.L.R. 867, 873, 883-88 (4th ed. 1985); 43 Am. Jur. 2d Insurance § 391 (4th ed. 1982).

---

[3] The same rule applies to provisions in an insurance policy that set forth requirements for notice of cancellation.  Where, as here, the policy provisions conflict with the applicable statute, the statute controls.  See Ampy v. The Metropolitan Casualty Insurance Company of New York, 200 Va. 396, 400, 105 S.E.2d 839, 844 (1958) (Code provision regarding cancellation of motor vehicle insurance became part of insurance policy and insurer had to comply with it); see also Boman v. State Farm Mutual Automobile Insurance Co., 505 So.2d 445, 450 (Fla. Dist. Ct. App. 1987); Smith v. Municipal Mutual Insurance Co., 169 W.Va. 296, 301, 289 S.E.2d 669, 671-72 (1982); Martin J. McMahon, Annotation, Actual Receipt of Cancellation Notice Mailed By Insurer as Prerequisite to Cancellation of Insurance, 40 A.L.R. 867, 871 (4th ed. 1985).

This rule is consistent with the policy that underlies Code § 65.2-804(B). As the Court noted in Barlow, one purpose of the notice requirement is to allow employers to secure insurance with another carrier. See also Hartford Accident & Indemnity Co. v. Fidelity & Guaranty Insurance Underwriters, Inc., 223 Va. 641, 643-44, 292 S.E.2d 327, 328 (1982). If the employer does not receive the notice, the employer does not have the opportunity to secure other insurance, and thus the statutory purpose is not fulfilled. See Larocque, 536 A.2d at 531; Smith, 169 W.Va. at 299, 289 S.E.2d at 671.

CIGNA met its burden of showing, based on credible evidence, that the employer received the notice.[4] First, CIGNA presented evidence concerning its regular procedure for mailing notices of cancellation. This evidence supports a finding that the notice

---

[4] Insurance companies typically meet this burden through application of the presumption that correspondence properly mailed is received by the addressee. See Larocque, 536 A.2d at 532; Osborne, 719 S.W.2d at 741. In Virginia, the mailing of correspondence, properly addressed and stamped, raises a presumption of receipt of the correspondence by the addressee. Washington v. Anderson, 236 Va. 316, 322, 373 S.E.2d 712, 715 (1988). Denial of receipt by the addressee raises an issue for the fact finder. Manassas Park Development Co. v. Offutt, 203 Va. 382, 385, 124 S.E.2d 29, 31 (1962).

Here, the notice was not "properly addressed" because, due to Villwock's failure to inform CIGNA of his change of address, it was mailed to his former address and therefore had to be forwarded. We need not decide whether the mailing presumption applies in the circumstances of this case. Even without benefit of the presumption, which disappears upon denial of receipt by the addressee, credible evidence supports the finding that Villwock received the notice.

was mailed from CIGNA in the regular manner. Villwock disputes this, arguing that the commission's late receipt of the notice negates any inference that the mailing was handled in a regular manner. However, a postal delay in processing the commission's copy of the notice, or a delay by the commission handling the notice once it arrived, is irrelevant to the procedures used by CIGNA in handling Villwock's notice. Also, the notices to the commission and Villwock were mailed using different procedures, with notice to the employer going out the day it was typed, and notice to the commission going out two to five days later through bulk mail. While CIGNA's procedures for mailing commission notices may have contributed to the delay, this does not suggest that Villwock's notice was handled other than in the regular manner.

Second, none of the correspondence from CIGNA to Villwock concerning either the audit or the cancellation was returned as undeliverable. Indeed, CIGNA showed and Villwock acknowledged that he had received the refund check from CIGNA that was mailed to his former address. He also testified that he had received forwarded mail and was unaware of failing to receive any forwarded mail other than the notices concerning his insurance. The commission was justified in concluding that Villwock's haphazard procedures for handling business mail, as well as his history of failing to respond to verbal notice provided by his insurance agent, supported the inference that he received the cancellation notice but failed to respond, either deliberately or

through negligence.  We hold that Villwock's insurance was effectively cancelled.

According to Villwock's testimony, mail to his former address in Huddleston was forwarded to his new address.  While CIGNA added five days to the notice period to account for mailing, the necessity of forwarding may have delayed the notice so that the notice period was less than thirty days.  However, even if it was received late, the notice was still effective.

Villwock had more than thirty days' notice of the need to procure substitute insurance.  The commission, because it received its notice less than thirty days before the notice period set by CIGNA was due to expire, established a new cancellation date of October 21, 1993.  The commission sent a notice to Villwock that informed him of the new cancellation date.  The commission's action negated any failure to comply with the thirty-day notice period set by the statute.  Moreover, under the rule generally applicable to cancellation of insurance, failure to give the notice of the requisite length does not void the notice; instead, cancellation becomes effective after the required period has lapsed.  See Wright v. Grain Dealers National Mutual Fire Insurance Co., 186 F.2d 956, 960-61 (4th Cir. 1950) (applying Virginia law); 43 Am. Jur. 2d Insurance § 389 (1982). In addition, both CIGNA and NCCI informed Villwock in August, more than two months before the cancellation date, that his insurance would be cancelled for failure to provide information necessary for the audit.  Villwock's insurance was effectively

cancelled under Code § 65.2-804(B).

Therefore, the judgment of the commission is affirmed.

Affirmed.